**NOT PRECEDENTIAL**

FOR THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1485
_____

RITA KHILEN BHATT,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No.:  A089-241-900)
Immigration Judge:  Honorable Walter Durling

_____

Argued on January 22, 2015

Before:  RENDELL, SMITH and KRAUSE, Circuit Judges

(Opinion filed: April 2, 2015)

Valerie A. Burch, Esq. **(ARGUED)**
The Shagin Law Group
120 South Street
The Inns of St. Jude
Harrisburg, PA 17101

        Counsel for Petitioner


Eric H. Holder, Jr., Esq.
Thomas W. Hussey, Esq.
Andrew B. Insenga, Esq. **(ARGUED)**
Virginia M. Lum, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

        Counsel for Respondent

---

O P I N I O N[*]

---


**RENDELL**, Circuit Judge:

Petitioner Rita Bhatt is an Indian national who petitions for review of the Board of

Immigration Appeals' ("BIA") decision to deny withholding of removal relief under the

United Nations Convention Against Torture ("CAT"). Bhatt applied for CAT relief on

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

the basis that her marriage outside of her caste caused her to suffer torture at the hands of her family. The Immigration Judge ("IJ") granted her application, but the BIA reversed, finding that Bhatt had not demonstrated that the Indian government would "acquiesce" in any future torture she may experience if she were removed to India. Bhatt now argues that the BIA applied the wrong standard of review of the IJ's decision, and its order should be vacated. Specifically, Bhatt avers that the BIA failed to give appropriate deference to the IJ's findings under the clear error standard of review and misapprehended the definition of governmental "acquiescence" in determining the likelihood of her future torture. As the meaning of "acquiescence" is a legal matter, we have jurisdiction to review the BIA's ruling.[1] For the reasons outlined below, we conclude that the BIA used the incorrect analysis regarding what constitutes "acquiescence" in reversing the IJ, and therefore, we must reverse and remand to the BIA to address the likelihood of government acquiescence using the correct analysis.

---

[1] Respondent asserts that this Court lacks jurisdiction over Bhatt's petition because she has raised no legal or constitutional questions in her claim, and therefore, under 8 U.S.C. § 1252(a)(2)(C), this Court may not review Bhatt's final order of removal. Subsection (C) of § 1252(a)(2) divests courts of jurisdiction over final orders of removal of any alien removable because of a criminal conviction. Subsection (D), however, permits judicial review of constitutional issues and issues of law. Because Bhatt's removal order was issued based on her plea of *nolo contendre* to her aggravated assault charge, Bhatt must raise legal issues on appeal in order to evoke our jurisdiction. As we conclude that the BIA's analysis both misapplied the clear error standard of review and misapprehended the meaning of "acquiescence," we are addressing legal issues and properly exercising our jurisdiction. *See Roye v. Att'y Gen. of U.S.*, 693 F.3d 333, 339 (3d Cir. 2012) (holding that whether BIA properly applied the clear error standard of review and the standard for likelihood of torture with government acquiescence each constitute legal questions providing basis for appellate jurisdiction); *see also Pieschacon-Villegas v. Att'y Gen. of U.S.,* 671 F.3d 303, 311 (3d Cir. 2011).

## I. BACKGROUND

Bhatt is a 41-year-old citizen of India and member of the Sudhra caste, one of the lowest castes in India. She married her husband, a member of the highest, Brahmin, caste. Both families disapproved of the relationship and hers took extreme measures to end it—namely, her brother locked her in a room for a week and beat her, releasing her only after she promised never to see her husband again. She suffered several bruises from the beatings, and visited a hospital after her release, where she was prescribed painkillers. She never reported her beating to the police, explaining that she did not trust that they would help her because the police are corrupt, only act if given a bribe (which she was unable to provide), and generally do not interfere in what they characterize as "family disputes." She also feared that going to the police would escalate the situation and cause her more harm.

Bhatt and her husband then fled to another town in India. However, her brother located them and came to their home with the intent of harming her husband, unable to do so only because her husband was not home at the time. The couple then made arrangements to flee to the United States. Bhatt was able to enter the United States shortly thereafter on a fraudulent visa, but her husband remained in India. Bhatt claimed that her brother then made a thinly veiled attempt to harm or kill her husband while he was still in India by getting him in a car accident. Her husband survived and made it to the United States two years after her. Neither have been lawfully admitted or left the United States since that time.

4

In 2009, Bhatt was charged under Pennsylvania law with aggravated assault, endangering the welfare of children, simple assault, and recklessly endangering another person. In September 2010, Bhatt pled *nolo contendre* to the aggravated assault charge and received a sentence of between two and a half years to five years in prison. These removal proceedings followed.

The Department of Homeland Security ("DHS") instituted removal proceedings against Bhatt, and she sought deferral of removal based on Article 3 of CAT because she feared torture in India based on her past experiences and her inter-caste marriage. The IJ granted her application, and the case was initially appealed to the BIA, which remanded for specific fact finding as to the likelihood of torture, specifically, the likelihood that Bhatt would encounter her family upon return to India, the possibility of relocation, and the specific mistreatment she is likely to suffer if she were returned to India. On remand, the IJ granted her application a second time.

The IJ concluded that Bhatt had met her burden of proof to establish the likelihood of being tortured by her family if she were to return to India because of her inter-caste marriage. He noted that to qualify for withholding of removal under CAT, an applicant must demonstrate that it is more likely than not that he or she will be tortured if removed to the country at issue. He reasoned that the acquiescence of a public official, a necessary element to obtain CAT relief, does not require that the government have actual knowledge of torturous conduct, but can be satisfied by showing that the foreign government is willfully blind to the conduct in question, or has breached its legal

5

responsibility to prevent such torture. (A.R. 149 (citing *Silva-Rengifo v. Atty's Gen. of U.S.*, 473 F.3d 58, 70 (3d Cir. 2007)).)

The IJ found Bhatt to be credible, and that her testimony was internally consistent with known country conditions in India. For example, the IJ found credible and significant Bhatt's testimony that the reason she did not report her captivity or the fact that her brother beat her was her "fear of escalating an already bad situation, and because she knew the police never intervened in family disputes." (A.R. 148.) The IJ also made extensive findings as to the country conditions, demonstrating the likelihood that Bhatt would be subjected to torture and that the government would fail to act in this gender-based situation, and concluded that while the government is not "uncaring," it is "apathetic to the point of maintaining a *de facto* policy of discrimination and violence against women." (A.R. 150.) The IJ also found this to be the case in spite of the Indian government's "sometimes public protestations to the contrary." (A.R. 70.) The IJ therefore concluded that "given the long history of violence against women with little accountability of the perpetrators, and with minimal police protections to the victims, the acquiescence of the Indian government to [Bhatt's] likely torture is present." (A.R. 151 (citing *Silva-Rengifo,* 473 F.3d 58).) DHS appealed to the BIA.

The BIA did not take issue with the IJ's ruling that the harm Bhatt had experienced in the past at the hands of her brother was severe enough to be considered torture, nor did it note any disagreement with his finding that she would more likely than not suffer conduct that rose to that same level in the future if returned to her home country. However, the BIA did disagree with the IJ's determination that Bhatt would

6

likely experience torture *with governmental acquiescence* if returned to India. The BIA noted that "it is an applicant's burden to show that she more likely than not will be tortured 'by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity' upon removal," and held that Bhatt had not met this burden. (A.R. 5 (citing 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)).)

The BIA concluded that Bhatt did not prove "that a public official in India more likely than not would acquiesce in her torture" (A.R. 5) for two reasons: first, it stated, "the record does not indicate any official complicity in the past incident involving her brother, even to the extent of turning a blind eye," and that "[Bhatt] did not report the incident to the police, who thus were not given an opportunity to respond." (*Id.*) Second, it stated, "the background evidence indicates that the Indian Constitution guarantees a right to equality regardless of gender or caste and the Indian government is actively working to protect and promote inter-caste marriages by, for example, offering bonuses for those who enter into such marriages and calling for harsher penalties for inter-caste crimes and honor killings . . . . The Supreme Court of India has instructed state governments to 'root out' honor killings and punish officials who fail to act against offenders . . . . That these efforts by the Indian government have met with limited success is insufficient to conclude that a police officer or other government official likely would turn a blind eye to the applicant's torture." (A.R. 5-6.)

Although purporting to review for clear error, the BIA did not address the IJ's finding that, despite its official policies, India remains "apathetic to the point of maintaining a *de facto* policy of discrimination and violence against women." (A.R.

7

150.) Moreover, although the BIA did not disturb the IJ's credibility findings, it did not acknowledge, much less discuss, Bhatt's testimony that she did not report the domestic violence because she feared reprisal and knew the police would not intervene. (A.R. 23.) Rather, the BIA reasoned that because Bhatt did not report her abuse to the police and because the Indian government had an official policy against the treatment Bhatt experienced, the IJ clearly erred when it found that the Indian government was likely to acquiesce to her torture. Having concluded the element of acquiescence was absent, the BIA held that Bhatt could not be eligible for relief under CAT.

## II. DISCUSSION

Where, as here, the BIA overturns the IJ's decision, we review the BIA's decision. *Pierre v. Att'y Gen. of U.S.*, 528 F.3d 180, 184 (3d Cir. 2008); *Abdulai v. Aschroft*, 239 F.3d 542, 548-49 (3d Cir. 2001). We review the BIA's legal determinations de novo, subject to *Chevron*, but because the petitioner is subject to removal based on her aggravated felony conviction, our jurisdiction is limited to constitutional claims or questions of law and "factual or discretionary determinations are outside our scope of review." *Pierre*, 528 F.3d at 184; see 8 U.S.C. § 1252(a)(2)(C)-(D).

The Convention Against Torture does not require an alien to prove that the government in question approves of torture, or that it consents to it; rather, an alien can satisfy the burden established for CAT relief by producing sufficient evidence that the government in question is willfully blind to such activities. 8 U.S.C. § 1231; 8 C.F.R. § 1208.18(a)(1); *Silva-Rengifo*, 473 F.3d at 70. Acquiescence also does not require that the government have *actual knowledge* of the torturous activity; instead, governmental

8

acquiescence may be shown "by producing sufficient evidence that the government in question is willfully blind to such activities." *Pieschacon*, 671 F.3d at 311; *Silva-Rengifo*, 473 F.3d at 65.

The issue before the BIA was whether the factual findings of the IJ were clearly erroneous, or whether the IJ had made an error in applying the law to the facts. If the latter, it could review de novo. While the BIA indicated that it reviewed for clear error—and indeed found "clear error" by the IJ—its application of the standard was wrong and its reasoning was misguided. To find clear error, the BIA must consider the evidence before the IJ, and conclude that "on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1984). The BIA's review must reflect a "meaningful consideration of the record as a whole," and it "must explain why the record warrants a different conclusion than the one reached by the IJ." *Huang v. Att'y Gen. of U.S.*, 620 F.3d 372, 387 (3d Cir. 2010).

Instead of undertaking this clear error review of the IJ's findings regarding the Indian government's acquiescence to Bhatt's likely torture if she were returned to India, the BIA here appears simply to have ignored the evidence that was before the IJ. In reviewing the country conditions, the BIA focused on the government's official policies—as set forth in India's Constitution, and the "instructions" of the Supreme Court—while largely ignoring the IJ's findings regarding the evidence of actual country conditions. The BIA then concluded: "That these efforts by the Indian government has

9

been met with limited success is insufficient to conclude that a police officer or other government official likely would turn a blind eye to the applicant's torture." (A.R. 5-6.) And in reviewing Bhatt's testimony, the BIA concluded that Bhatt's failure to give the police the opportunity to respond to her past torture materially undermined her case but did not address Bhatt's testimony explaining her reasons for declining to report her abuse, which the IJ found credible.

The BIA's conclusions are in conflict with what we and other courts have said are appropriate considerations in determining whether a government will likely acquiesce in a petitioner's torture. As to the petitioner's need to have notified the government of her torture, and its specific knowledge thereof, in *Silva-Rengifo*, we articulated a new standard for acquiescence in this Circuit, holding that government acquiescence no longer required actual knowledge of torturous conduct. 473 F.3d at 65. While evidence that a petitioner did notify police, and they did nothing, can support the claim, specific knowledge by the government need not be shown. Rather, willful blindness may be proven by other evidence, which may include testimony like petitioner offered here as to her reasons for declining to report. The BIA did not take issue with the IJ's credibility finding concerning this or other aspects of the petitioner's testimony, yet it failed to acknowledge, much less discuss, that evidence before concluding the IJ clearly erred.

Perhaps the more fundamental flaw in the BIA's analysis was its focus on government efforts rather than actual conduct, i.e., the results of those efforts. In *Pieschacon*, we held that the Colombian government's official opposition to FARC (the Revolutionary Armed Forced of Columbia) did not bar a showing of acquiescence to

10

torture. Because the Colombian government was still aware of FARC's activities and willfully blind to those activities—that is, it knew about what FARC was doing generally, and did nothing to stop it—it was acquiescing to the torture that FARC inflicted. 671 F.3d at 311-12. A government's policies to root out torturous activity are also not dispositive of the issue of whether such torturous activity occurs with acquiescence. *See Zheng v. Ashcroft*, 332 F.3d 1186, 1194-97 (9th Cir. 2003).

We conclude that the BIA misapplied the clear evidence standard of review and misconstrued what determines "acquiescence"—i.e., actual conditions and conduct that would be present and occur rather than dogma or court "instructions" that amount to no more than the government's position or efforts—and, thus, erred in applying the law to the facts. Accordingly, we will remand for the BIA to conduct the appropriate analysis in the first instance.[2]

---

[2] In *INS v. Ventura,* 537 U.S. 12 (2002), the Supreme Court instructed that we are not to review the evidence presented by Bhatt under the correct standard for acquiescence to determine if there is substantial evidence to support the BIA's conclusion that Bhatt does not qualify for CAT relief. Rather, we remand to the BIA to give it the first opportunity to apply the correct standard of acquiescence. *See id.* at 16 ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."); *see also Silva-Rengifo*, 473 F.3d at 71 (remanding to the BIA to apply the correct standard of "acquiescence"); *Zheng*, 332 F.3d at 1197 (same).