

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-25-2006

# Rehman v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1074

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Rehman v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1227.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1227

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-1074

———

SYED ABDUL REHMAN,
                                    Petitioner

v.

*ATTORNEY GENERAL OF THE UNITED STATES

* (Amended Per the Clerk's Order of 4/28/05)

———

Petition for Review of an Order
of the Board of Immigration Appeals
(A97-442-086)
Immigration Judge: Mirlande Tadal

———

Argued March 2, 2006

Before: SLOVITER, FUENTES, Circuit Judges, and RESTANI,* Judge

(Filed April 25, 2006)

———

Mehreen Shah        (Argued)
Mona Shah & Silvers, P.C.
299 Broadway
Suite 1520
New York, New York 10007

        Attorney for Petitioner

_____

        *  Honorable Jane A. Restani, Chief Judge of the United
States Court of International Trade, sitting by designation.

Mary Beth Buchanan
        United States Attorney
Stephen S. Stallings (Argued)
        Assistant United States Attorney
Office of United States Attorney
700 Grant Street
Suite 400
Pittsburgh, PA 15219

John M. McAdams Jr., Esq.
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

        Attorneys for Respondent

OPINION

SLOVITER, Circuit Judge.

**I.**

Petitioner Syed Abdul Rehman, born in Saudi Arabia, is a citizen of Pakistan. His parents and three of his siblings immigrated to the United States while he was working toward a bachelor's degree in pharmaceutical studies. From January 2003 to February 2004, after attaining this degree, Rehman worked as a pharmacist at Holy Family Christian Missionary Hospital ("the Hospital") in Karachi, Pakistan. During his tenure at the hospital, Rehman was accepted into a masters's degree program at Long Island University ("LIU" or "the University") in Brooklyn, New York. After the University

2

informed him that he could begin attending classes on January 20, 2004, he applied for and was issued an F-1 Visa from the U.S. Consulate in Karachi, Pakistan. Because he did not receive the visa until January 31, 2004, LIU informed him that he would have to delay enrollment until August 2004. Rehman intended to apply for a new visa, but the events giving rise to this asylum claim interceded.

As a pharmacist at the Hospital, Rehman dispensed medicine for mostly non-Muslim patients. Rehman claims that from August 2003 to February 2004, a man whom Rehman described as dressing and acting like a radical fundamentalist Muslim (wearing, inter alia, a "Taliban cap") approached Rehman at work several days a week in an effort to convince him to take part in a terrorist attack against Christian employees and patrons at the Hospital. In particular, the man urged him to distribute poison disguised as pharmaceuticals to Christians on Easter, 2004. On February 21, 2004, the man arrived at the hospital with four armed men, showed Rehman the poison pills, and threatened Rehman's life should he refuse to cooperate. Rehman refused and did not return to work at the Hospital after that day.

The only person with whom Rehman spoke about the threats was his father's friend, who advised Rehman not to report the events to the Pakistani authorities because "the police and each and every law in our country ha[ve] not protected us . . . from these radical groups." App. at 116. Indeed, Rehman did not report the threats to Pakistani authorities. Instead, he left Pakistan on March 1, 2004, fearing he would be killed for his refusal to participate in the terrorist plot.

3

On March 2, 2004, Rehman attempted to enter the United States via Newark Liberty International Airport and was detained by the Department of Homeland Security following a determination that he had demonstrated a credible fear of persecution upon return to Pakistan. On April 19, 2004, he submitted applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT) on grounds of past persecution and fear of future persecution by radical fundamentalists in Pakistan.

Following a hearing on August 3, 2004, the Immigration Judge ("IJ") denied Rehman's request for relief. The IJ gave Rehman's testimony "full-credence" and found it "consistent with his asylum application and consistent on direct and on cross-examination." App. at 48. However, the IJ concluded that Rehman had failed to meet his burden of establishing past persecution or a well-founded fear of persecution by the Pakistani government or forces that government is unable or unwilling to control. Accordingly, the IJ concluded that Rehman also had failed to meet the higher burdens necessary for withholding of removal and CAT relief.

The IJ based her conclusion on the grounds that (1) the profession of "pharmacist" does not constitute a statutorily protected "social group," and (2) the alleged persecution in this case was not at the hands of the Pakistani government or forces the government was unable or unwilling to control. On December 10, 2004, the BIA affirmed the IJ's decision. Rehman timely petitioned this Court for review.

## II.

To qualify as a "refugee" who may receive asylum, an alien must establish that

4

s/he is unable or unwilling to return to his or her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To establish past persecution and entitlement to asylum, an applicant must show that at least one incident (1) constituted persecution, (2) occurred on account of one of the statutorily protected grounds, and (3) was committed by the government or forces the government was either unable or unwilling to control. Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir. 2004). "[A]n alien who offers credible testimony regarding past persecution is presumed to have a well-founded fear of future persecution." Id.

We review an IJ's determination whether an applicant has demonstrated persecution or a well-founded fear of persecution under the substantial evidence standard. See, e.g., He Chun Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004). Under this deferential standard, the IJ's factual determinations will be upheld to the extent that they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4). Where, as here, the BIA issues a short opinion affirming and explicitly incorporating an IJ's decision, we review the IJ's decision. Konan v. Att'y Gen., 432 F.3d 497, 500 (3d Cir. 2005). In reviewing an asylum application, "an IJ must consider the *complete record*," Caushi v. Att'y Gen., 436 F.3d 220, 226 (3d Cir. 2006) (emphasis added), and the IJ's conclusions must "flow in a reasoned way from the evidence of record," see Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc).

5

To qualify for asylum based on membership in a particular social group, the alien must (1) identify the group which constitutes a "particular social group," (2) establish that s/he is a member of that group, and (3) show that s/he was persecuted or has a well-founded fear of persecution based on that membership. Fatin v. I.N.S, 12 F.3d 1233, 1240 (3d Cir. 1993). Membership in a "social group" can be attributed either to those who share an immutable characteristic or to those who possess a shared past experience or some other common characteristic so fundamental to conscience and individual identity that they should not be required to modify it. Id. at 1239-40.

The IJ held that membership in the profession of "pharmacist" could not constitute a protected social group. However, Rehman was not targeted for being a member of that profession. Instead, Rehman was targeted for being part of a narrower group, namely: professionals who have been targeted by terrorists because they were in positions of authority and refused to use their positions to perpetrate a terrorist attack. This group is a "particular social group" not because its members possess an immutable characteristic but because they share the common past experience of having refused recruitment by terrorists to abuse positions of authority. See Lukwago v. Ashcroft, 329 F.3d 157, 178 (3d Cir. 2003). Furthermore, the conviction not to use a position of authority to commit terrorist attacks is clearly a matter of conscience. Id. at 171; Fatin, 12 F.3d at 1240.

The IJ also held that Rehman failed to demonstrate persecution at the hands of the Pakistani government or forces the government is unable or unwilling to control. In particular, the IJ stressed that Rehman never reported any of the incidents to the

6

authorities in Pakistan and that Rehman could not identify the particular terrorist organization with which the threatening terrorist was affiliated.

Rehman's failure to report the threats to the Pakistani government is not fatal to his claim. Rehman presented evidence, in the form of an affidavit from Dr. John Adams, an expert on South Asian affairs, explaining that "[t]here would be a natural reluctance to approach the police about [a threat from a terrorist group]" and that such reluctance would be reasonable because "[i]n any case, the police could not act until a crime had been committed, if they were even then inclined to do so." App. at 181.

We believe it significant that the IJ failed to acknowledge this evidence on the record and did not cite any evidence to the contrary. Indeed, the IJ cites to a State Department report using data from 2001 and 2002 to support the proposition that the Pakistani government has been "attempting to address [the terrorist] situation," but "*maybe not successfully*."[1] App. at 55 (emphasis added). If anything, this evidence tends to support Dr. Adams's affidavit, showing that the Pakistani government may have been unable to control terrorist groups despite its efforts to do so.

---

[1] The U.S. State Department's 2005 Country Report for Pakistan suggests that the Pakistani government has made little progress combating terrorism since the earlier report cited by the IJ. It states that "[i]n accordance with the Anti-Terrorist Act, the government banned the activities of and membership in several religious extremist and terrorist groups. However, many of the groups that the government banned still remained active." U.S. Dep't of State, Country Report on Human Rights Practices: Pakistan (2005).

7

Rehman's inability to identify the particular terrorist group with which the man who threatened him was affiliated also is not fatal to his petition for relief. The IJ did not discuss any evidence that the Pakistani government's lack of success in controlling terrorist groups is limited to particular groups. Even if such evidence were extant, Rehman's lack of knowledge as to the man's affiliation would not undermine the reasonableness of Rehman's failure to notify authorities because of the remaining possibility that the man belonged to a group the government could not control.

The IJ's failure to consider evidence on the record directly supporting Rehman constitutes error under the substantial evidence standard because the IJ failed to consider "the complete record." See Caushi, 436 F.3d at 226. Moreover, the IJ's conclusions were based on outdated government reports and do not "flow in a reasoned way from the evidence of record." Dia, 353 F.3d at 250.

## III.

For the foregoing reasons, we will grant the petition for review, vacate the final order of the BIA and remand to the BIA for further consideration of the record evidence and the more recent Pakistan country conditions report. See supra note 1; see generally Berishaj, 378 F.3d at 317 (decrying the use of stale administrative records).