**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1431
_____

MOHAMMAD ISRAIL,
                                        Petitioner
v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
(Agency No. A088-646-866)
Immigration Judge: Honorable Philip Verrillo
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 20, 2016
_____

Before: SMITH, *Chief Judge*, McKEE and SHWARTZ, *Circuit Judges*.

(Opinion filed: June 8, 2017)

_____

OPINION[*]
_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

McKEE, *Circuit Judge*

Mohammad Israil seeks review of the Board of Immigration Appeal's decision affirming the Immigration Judge's dismissal of Israil's claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the reasons that follow, we will dismiss Israil's petition for asylum, but grant Israil's petition for review on his withholding of removal and CAT claims.

## I.[1]

Israil is a 58-year-old citizen of Pakistan who entered the United States on February 17, 2006. Before the Immigration Judge, Israil testified that he is a member of the Awami National Party ("ANP"), a leftist political party that openly opposes the Taliban. In 2003, Israil became the General Secretary for the ANP in Kabal. In December 2005, Taliban members came to Israil's home when he was not there and instructed Israil's brother to tell Israil that he should leave the ANP and remove his children from school or the Taliban would not "leave [him] alive."[2] Israil reported the threats to the local police but did not receive any assistance. Shortly thereafter, Israil received a letter from the Taliban stating he would be killed if he did not leave the ANP. In response, he fled with his family to Peshawar. There, they relocated several times over a three month period out of fear of being found by the Taliban.

Israil then came to the United States in 2006. His family has remained in

---

[1] Because we write for the parties who are familiar with the factual and procedural history of this case, we provide only the background necessary to our conclusions.
[2] A.R. 142.

Pakistan, but Israil testified that they continue to move frequently based on a belief that the Taliban would retaliate against them for Israil's flight. Israil testified that between 2005 and 2014 his wife and children lived in Swat, Peshawar, Karachi, Nagar, Mardan, Deri, and Kabul, sometimes moving several times within the same city or region. His children have been unable to attend school in part because of fear that the Taliban would kidnap them in order to coerce them into disclosing Israil's whereabouts. Their fear of the Taliban targeting Israil was corroborated on or about June 30, 2009, when Israil's name was broadcast on a Taliban-run radio station and he was identified as someone the Taliban wanted to find. Israil also testified that the Taliban came to his home in Tal in 2011 and 2012 and threatened his wife during the brief periods when she returned to check on their home.

On August 20, 2008, Israil filed an application for asylum, withholding of removal, and withholding under CAT. His filing was beyond the one year time bar for asylum applications, but Israil claimed that the application should still be considered based on changed circumstances in Pakistan. The IJ denied Israil all relief. Specifically, the IJ found that Israil failed to show changed circumstances in Pakistan sufficient to excuse his untimely petition. The IJ also found that Israil had not established the past persecution and possible future persecution necessary for withholding of removal, and that he had not established the likelihood of torture that would qualify for protection under the CAT if he returned to Pakistan. The BIA subsequently affirmed and this petition for review followed.

## II.[3]

We first address Israil's application for asylum and his claim that changed circumstances in Pakistan should excuse the untimeliness of his petition.[4] Israil argues that his untimely application should be excused under 8 U.S.C. § 1158(a)(2)(D) because conditions in Pakistan have changed since he arrived in the United States. However, 8 U.S.C. § 1158(a)(3) limits our jurisdiction to reviewing constitutional claims and questions of law.[5] We do not have authority to review the BIA's discretionary findings of fact in determining whether country conditions had sufficiently changed to justify a late filing.[6] Here, the BIA found that conditions in Pakistan had not changed such that Israil's petition's untimeliness could be excused. Israil challenges only the factual underpinnings of the IJ and BIA's determination, arguing that conditions have changed.[7] However, he does not assert any legal or constitutional challenges to the BIA's

---

[3] We have jurisdiction to review the IJ and BIA's findings regarding Israil's application for withholding of removal and protection under CAT. 8 U.S.C. § 1252(a). We review using the substantial evidence standard. *Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d. Cir. 2003). Accordingly, we will not disturb the BIA's findings if "a reasonable fact finder could make a particular finding on the administrative record." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003); *see also* 8 U.S.C. § 1252(b)(4)(B). However, as is discussed fully below, we lack jurisdiction to review the conclusion that Israil's untimely filing of his asylum application is not excused due to changed country conditions.
[4] 8 U.S.C. § 1158(a)(2)(D) allows consideration of an untimely petition if "the alien demonstrates to the satisfaction of the Attorney General . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum."
[5] 8 U.S.C. §§ 1158(a)(3), 1252(a)(2)(D). *See also Sukwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir. 2006).
[6] *Sukwanputra*, 434 F.3d at 633.
[7] Pet'r's Br. 21–25.

determination. Accordingly, we do not have jurisdiction to review the dismissal of Israil's asylum petition.

Israil next argues that the IJ and BIA improperly denied his application for withholding of removal. To be eligible for withholding of removal, an applicant must establish either past persecution or a well-founded fear of experiencing persecution in the future upon removal to their home country, and the persecution must be "on account of," among other things, "membership in a particular social group, or political opinion."[8] A withholding of removal claim may be properly denied if the evidence demonstrates that future persecution could be avoided if the alien relocated to a different part of his home country.[9]

We have held that a lack of physical harm, and threats that were not highly imminent in nature did not constitute past persecution.[10] Here, Israil left the country following threats he received from Taliban members through his brother and a letter in the mail. Because Israil was never directly threatened or given a deadline to comply, the threats he received were not sufficiently imminent to constitute past persecution.[11] We

---

[8] 8 C.F.R. § 1208.16(b).

[9] 8 C.F.R. § 1208.16(b)(2).

[10] *See Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 341 ("[W]e have limited the types of threats constituting persecution to only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm.")

[11] *See Gomez-Zuluaga*, 527 F.3d at 336, 341–42 (holding that incidents where the petitioner was "rounded up" at gunpoint without physical injury or robbery were "oblique and not imminent" and did not constitute persecution); *Li v. Att'y Gen.*, 400 F.3d 157, 164 (3d Cir. 2005) (concluding that in determining whether a petitioner experienced past persecution "threats standing alone constitute persecution in only a small category of

therefore conclude that the record supports the BIA's determination that those threats did not rise to the level of past persecution.

Accordingly, Israil is only eligible for withholding of removal if he can demonstrate the threat of future persecution by "establish[ing] that it is more likely than not that he . . . would be persecuted on account of . . . [his] political opinion upon removal to that country."[12] There is no question that the Taliban is opposed to the ideology and mission of Israil's political party, the ANP, and have assassinated hundreds of the parties' members, including Israil's wife's cousin. Additionally, "[U]nfulfilled threats [that] fall within that category of past experience [are] more properly viewed as indicative of the danger of future persecution."[13] Before he left Pakistan, Israil received two threats from the Taliban demanding he leave the ANP or be killed. A full three years after Israil left Pakistan, the Taliban broadcast that they were still looking for him. Moreover, the Taliban visited his home in Tal in 2011 and 2012 to relay threats to his wife.

Nevertheless, the government asserts that Israil may safely relocate to a different part of Pakistan and thus he is unable to make out a claim of a reasonable fear of future persecution.[14] The IJ reasoned that relocation was reasonable because the Pakistani government is making efforts to target the Taliban. However, government attempts to

cases" and that "unfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution").
[12] 8 C.F.R. § 1208.16(b)(2).
[13] *Boykov v. INS*, 109 F.3d 413, 416 (7th Cir. 1997).
[14] Respondent's Br. 21–24.

control terrorist activity do not equate with actual success in controlling terrorist activity,[15] and the record contains more than enough to establish the Pakistani government's inability to control Taliban forces.

The government also points to the fact that Israil's family has remained in the country unharmed as evidence that Israil may safely return, but this conclusion glosses over the reason behind the frequent movement of Israil's family and the nature of the family's continuing flight. Israil's wife and children have lived in at least seven different regions of Pakistan, for periods ranging from three months to approximately two years, fleeing each area when they had reason to believe that they were no longer safe from the Taliban and that the Taliban would retaliate against them for Israil leaving the country. The mere fact that his wife and children have not been physically harmed during this time does not suggest that Israil may safely rejoin his family in Pakistan. Rather, it shows that the Taliban has thus far focused its vengeance only on Israil and not his family. Additionally, the multitude of different regions of Pakistan where Israil's wife and children have fled only to have to flee again strongly supports Israil's fear that he cannot safely return to a different region of Pakistan other than his hometown of Tal.[16]

---

[15] *Rehman v. Att'y Gen.*, 178 F. App'x 126, 129 (3d Cir. 2006) (noting that though the Pakistani government was attempting to address the terrorist situation, it was "maybe not [doing so] successfully").

[16] The First Circuit recently reached a similar conclusion while considering the reasonableness of an ANP member relocating within Pakistan. *Khattak v. Holder*, 704 F.3d 197 (1st Cir. 2013) (granting asylum petition for Pakistani member of the ANP and finding that the IJ had failed to consider evidence that ANP members were "major targets of attack" and the Taliban's reach extended outside the Khyber Pakhtunkhwa province).

Finally, when assessing the reasonableness of relocation, the adjudicator "should consider . . . ongoing civil strife within a country."[17] The government concedes that "the family moves to avoid generalized conditions of violence and civil strife."[18] The evidence supports Israil's fear of future persecution, as well as the unreasonableness of forcing Israil to relocate to a different area of Pakistan.[19] Accordingly, we hold that Israil succeeded in proving the likelihood of future persecution.

Last, Israil challenges the denial of relief under the CAT. For relief under the CAT, Israil must establish that "it is more likely than not that he . . . would be tortured if removed to the proposed country of removal."[20] "Torture" under CAT "is an extreme form of cruel and inhuman treatment" that is inflicted by or with the acquiescence of a public official.[21] The "acquiescence" component can sometimes be established where the government is willfully blind to torture by nongovernment actors.[22] Although there is evidence in the record that the government of Pakistan has made some efforts to curb the Taliban's terrorist activities, this evidence does not foreclose the need to examine the

---

[17] 8 C.F.R. § 1208.16(b)(3).

[18] Respondent's Br. 23.

[19] The government argues that Israil's future persecution claim is weakened by his family members remaining in Pakistan "unharmed." Respondent's Br. 18, 22. However, this Court has held that a claim of future persecution is only weakened if the petitioner's family "remain safely" in the country and "*there is no individualized showing that petitioner would be singled out for persecution.*" *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) (emphasis added).

[20] 8 C.F.R. § 1208.16(c)(2).

[21] 8 C.F.R. § 208.18(a)(1), (2).

[22] *See Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017)*; Pieschacon-Villegas v. Att'y Gen.*, 671 F.3d 303, 311 (3d Cir. 2011)*; Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 65 (3d Cir. 2007).

record to determine whether there is governmental acquiescence to allow for relief under CAT.[23] Because Israil's CAT claim stems from the same underlying facts as his withholding of removal claim, we also vacate the BIA's dismissal of his CAT claim for the reasons discussed above.

### III.

For the reasons set forth above, we will grant Israil's petition for review in part. We dismiss Israil's petition as to his asylum claim but grant it as to his withholding of removal and CAT claims. We remand to the Board of Immigration Appeals for further proceedings consistent with this opinion.

---

[23] *See Myrie*, 855 F.3d at 516 ("Circumstantial evidence may establish acquiescence to targeted acts of violence even when the government has an official policy or is engaged in a campaign of opposition against the entity the applicant fears."); *Pieschacon-Villegas*, 671 F.3d at 311 ("[A] government's ability to control groups engaged in torturous activities may be relevant to, but not dispositive of, an assessment of willful blindness.").