**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-2424
_____

EVARISTO SERRANO VARGAS,
a/k/a Evaristo Vargas-Serrano,
a/k/a Desi Mata,
a/k/a Mata Desi,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A094-007-595)
Immigration Judge: Kuyomars Q. Golparvar

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 2, 2019

Before: SHWARTZ, KRAUSE, and FUENTES, *Circuit Judges*

(Opinion filed: November 4, 2019)

_____

OPINION*
_____

---

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Evaristo Serrano Vargas, an alien from Mexico, petitions for review of a final Board of Immigration Appeals (BIA) order denying his claim for protection under the Convention Against Torture (CAT). Because we cannot ascertain whether the BIA applied the proper standard of review in view of our intervening decision in *Myrie v. Attorney General*, 855 F.3d 509 (3d Cir. 2017), and because it did not have the opportunity to consider our recent decision in *Luziga v. Attorney General*, 937 F.3d 244 (3d Cir. 2019), we will grant the petition for review and remand to the BIA.

**I. Discussion**[1]

To obtain relief under CAT, Serrano Vargas must establish two elements: (A) "that it is more likely than not that he . . . would be tortured if removed to" Mexico, 8 C.F.R. § 1208.16(c)(2); and (B) that the torture would be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," *id.* § 1208.18(a)(1). After the Immigration Judge (IJ) rendered his decision but before the BIA conducted its review on appeal, we clarified the tests for these two elements in *Myrie*, explaining that each had a factual and legal component. 855 F.3d at 516–17. That clarification also informed the proper standard of

---

[1] The BIA had jurisdiction over the Immigration Judge's decision under 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction over Serrano Vargas's CAT claim under 8 U.S.C. § 1252(a)(1) and (4). Because Serrano Vargas has "concede[d] that his proffered social group . . . do[es] not meet the particular social group standards set forth in *S.E.R.L. v. Att'y Gen. of the U.S.*, 894 F.3d 535 (3d Cir. 2018)," Pet'r's Reply Br. 4, he has waived his claim for withholding of removal under § 241(b)(3)(A) of the Immigration and Nationality Act.

review by the BIA, with fact-finding reviewed for clear error and legal conclusions reviewed de novo. *See id.*; *see also* 8 C.F.R. § 1003.1(d)(3)(i)–(ii). We, in turn, review factual findings for substantial evidence and legal determinations de novo. *Myrie*, 855 F.3d at 516–17; *see Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 212–13 (3d Cir. 2017).

Here, as to likelihood of torture, the IJ found credible Serrano Vargas's testimony that the cartel would kill him for fleeing in defiance after an extortion attempt, but then considered and rejected that a different fear—based on reporting the cartel to police—was likely. As to government acquiescence, the IJ found that Mexican government officials were responding to the Petitioner's reports and protecting him. Without reference to *Myrie*, the BIA denied relief, adopting the IJ's "conclusion, for the reasons stated in his decision, that the applicant has failed to demonstrate that he is more likely than not to be tortured in Mexico, by or with the acquiescence (including willful blindness) of a government official."[2] AR 3.

In petitioning for our review, Serrano Vargas argues the BIA failed to apply *Myrie* at all and thus erred in its review of both elements. We address each below.

A.    Likelihood of Future Torture

Under *Myrie*, the IJ must first make a factual finding of "what is likely to happen to the petitioner if removed" and then a legal determination of whether "what is likely to happen amount[s] to the legal definition of torture." 855 F.3d at 516 (quoting *Kaplun v.*

---

[2] On Serrano Vargas's CAT claim, the BIA "affirm[ed] the [IJ]'s conclusion, for the reasons stated in his decision," AR 3, so we review the IJ's decision directly. *Serrano-Alberto*, 859 F.3d at 212 (citing *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010)).

*Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010)). The BIA, in turn, must review the first question for clear error and the second, de novo. *Id.*

Serrano Vargas argues that the BIA failed to consider "all evidence relevant to the possibility of future torture," 8 C.F.R. § 1208.16(c)(3), and that "[t]his record, taken as a whole, supports a claim that petitioner is likely to be tortured if returned to Mexico." Pet'r's Br. 22. In support, he points to his testimony and record evidence that his cousin and uncle were killed in his home state of Guerrero for not complying with the same cartel that extorted him, that his mother continued to receive threatening phone calls from cartel members looking for him, and that the cartel would find him and kill him even if he relocated to another part of Mexico. On this last point—his ability to relocate—Serrano Vargas faults the IJ for deeming his testimony not "plausible" even though the IJ found his testimony credible and did not indicate "a want of corroborating evidence under *Chukwu v. Attorney General*, 484 F.3d 185 (3d Cir. 2007)."[3] AR 70; Pet'r's Br. 8–9.

We do not reach the merits of these arguments, however, because we may only review the BIA's decision on the basis of its stated rationale, *see INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943)), and it is not apparent from the BIA's analysis here whether it conducted the review required by *Myrie*. For example, instead of asking whether, "on the entire

---

[3] Although Petitioner misidentifies the REAL ID Act of 2005 as the basis for this argument, in context it appears that he was objecting to the lack of notice that further corroboration was required under *Chukwu* and other cases we decided after the enactment of the REAL ID Act. *See* Pet'r's Br. 9 (citing *Saravia v. Att'y Gen.*, 905 F.3d 729 (3d Cir. 2018)).

4

evidence," it was "left with the definite and firm conviction that a mistake ha[d] been committed," *Alimbaev v. Att'y Gen.*, 872 F.3d 188, 195 (3d Cir. 2017) (quoting *United States v. U.S. Gympsum Co.*, 333 U.S. 364, 395 (1948)), the BIA appeared to affirm the IJ based on a single finding—that Serrano Vargas did not suffer past torture by any public official. Moreover, because the BIA did not mention relocation at all, it is not clear whether or how it reviewed the IJ's factfinding or failure to request corroboration concerning relocation. In any event, it assuredly did not have an opportunity to consider the effect of *Luziga*, which was issued during the pendency of this petition for review and reaffirmed that an IJ must "develop [a noncitizen applicant's testimony] in accord with the *Abdulai* steps" before "hold[ing] the lack of corroboration against [the] applicant." 937 F.3d at 255 (first and third alterations in original) (quoting *Chukwu*, 484 F.3d at 192).

Because it is unclear whether the BIA applied *Myrie* and the proper standard of review in addressing likelihood of torture and because it did not have an opportunity to consider the effect of *Luziga*, we will remand on this issue.

B.    Acquiescence

*Myrie* also clarified that the test for acquiescence likewise has two components: "a factual finding or findings as to how public officials will likely act in response to the harm the petitioner fears," which the BIA reviews for clear error, and a legal determination as to "whether the likely response from public officials qualifies as acquiescence under the governing regulations," which the BIA reviews de novo. 855 F.3d at 516–17.

5

Again, Serrano Vargas contends the BIA ignored *Myrie* and therefore erred in its application of these standards of review. If it had properly reviewed for clear error, he urges, it could not have adopted the finding that government officials would protect him because the country conditions reports reflect that the cartels continue to be violent and to collude with "law enforcement agencies . . . at every level," Pet'r's Br. 20, corroborating his testimony that Mexican government officials—and especially state officials in Guerrero—would acquiesce in the cartel retaliation he fears. Although the BIA had "a duty to explicitly consider any country conditions evidence submitted by an applicant that materially bears on his claim," *Liem v. Att'y Gen.*, 921 F.3d 388, 396 (3d Cir. 2019) (citation omitted), Serrano Vargas points out that it simply observed that "the government of Mexico was making efforts at combatting corruption, and the laws prohibit torture, beatings, and the physical abuse of detainees and prisoners," AR 3. Serrano Vargas also argues that, on de novo review, the BIA erred in concluding that government officials would not acquiesce or be willfully blind to the harm he fears because our holding in *Pieschacon-Villegas v. Attorney General*, 671 F.3d 303, 312 (3d Cir. 2011), allows "[c]ircumstantial evidence [to] establish acquiescence . . . even when the government has an official policy or is engaged in a campaign . . . against the entity the applicant fears." Pet'r's Br. 21.

Again, we need not reach what the proper disposition would be under the applicable standard of review because we cannot discern whether the BIA applied *Myrie*. Accordingly, remand is also appropriate on the acquiescence element. *See Myrie*, 855 F.3d at 517.

**II.** **Conclusion**

For the foregoing reasons, we will grant the petition for review and remand to the

BIA for further proceedings consistent with this opinion.