**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3360

_____

D.G.M.,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(Agency No. A088-446-835)
Immigration Judge: Walter A. Durling

_____

Argued: February 6, 2020

_____

Before: CHAGARES, RESTREPO, and BIBAS, <u>Circuit Judges</u>

(Opinion Filed: February 26, 2020)

Jules Epstein
Rachel L. Goodman **[ARGUED]**
Temple University
Beasley School of Law
1719 North Broad Street
Philadelphia, PA 19122

    <u>Counsel for Petitioner</u>

Sara J. Bayram
Anna E. Juarez **[ARGUED]**

United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Counsel for Respondent

_____

OPINION[*]

_____

CHAGARES, Circuit Judge.

D.G.M. petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") decision to deny his application for deferral of removal under the Convention Against Torture ("CAT"). For the following reasons, we will deny the petition for review.

I.

We write only for the parties, so our summary of the facts is brief. D.G.M., a native and citizen of Jamaica, entered the United States in 2000. In 2006, he pleaded guilty in federal court to conspiracy to distribute and possess with intent to distribute marijuana and to aiding and abetting the discharge of a firearm. D.G.M. cooperated with authorities to provide information about his co-defendants and was sentenced to time served, or 41 months of imprisonment. He was released in 2008. Then, in 2016, D.G.M. was convicted of making interstate threats in connection with a family dispute. In 2017,

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

he was placed into removal proceedings based on his 2006 conviction of an aggravated felony. D.G.M. applied for CAT protection.

D.G.M. proceeded pro se before the IJ. In support of his application, D.G.M. testified about his prior cooperation, explaining that he had provided information about his co-defendants, six Jamaican individuals who "were involved with the drug trade." Joint Appendix ("JA") 294. D.G.M. had testified against five of them in two separate trials. Four of D.G.M.'s co-defendants were eventually convicted and sentenced to at least thirty-five years in prison. D.G.M. testified that he feared returning to Jamaica because he would likely be harmed by his co-defendants or their families. He explained that at one of the trials, two of the co-defendants threatened him. D.G.M. stated that these individuals were Jamaican drug suppliers and from the same "ghetto" as him in Jamaica. JA295.

D.G.M. also testified that the co-defendants' friends threatened him when he was in prison in 2007. In 2009, one co-defendant, a United States citizen who had not been convicted, told D.G.M.'s girlfriend that he would kill D.G.M. when he saw him. D.G.M. further testified that a Jamaican individual whom he did not know threatened him in prison in 2016, accusing D.G.M. of testifying against the individual's friends and cutting D.G.M.'s palm with a sharp object. D.G.M. stated that he fears harm if removed to Jamaica by the gang to which the co-defendants belonged, because they "still run the ghetto" in Jamaica. JA303.

The IJ found D.G.M. credible but denied relief under the CAT. The IJ held that D.G.M.'s claim that he would likely be harmed if he was returned to Jamaica was

3

speculative because his co-defendants would not be released from prison until 2042 at the earliest and there was no evidence that their families reside in Jamaica. The IJ also found that, in any event, D.G.M. was also "unable to establish likely Jamaican government acquiescence to his torture if he is removed." JA19. The IJ reasoned that while there is corruption within the Jamaican government's ranks, it "cooperate[s] with the United States in fighting against drug trafficking and organized crime" and the Jamaican government "continues to charge police officers with abuses as well as other government officials with corruption." JA18–19.

The BIA agreed with the IJ's reasoning and dismissed D.G.M.'s appeal on October 20, 2017. D.G.M. timely filed a petition for review, and we appointed pro bono counsel to represent him.[1]

II.

The BIA had jurisdiction to review the IJ's decision under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review the BIA's order. However, because D.G.M. was convicted of an aggravated felony, our jurisdiction is limited to reviewing "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D), as "factual or discretionary determinations are outside of our scope of review," Pierre v. Att'y Gen., 528 F.3d 180, 184 (3d Cir. 2008) (en banc).

---

[1] We extend our gratitude to Jules Epstein and Rachel Goodman of Temple University Beasley School of Law for donating their time and talent in accepting this pro bono appointment and for zealously representing D.G.M. before our Court.

We review de novo the constitutional and legal questions raised by D.G.M.'s petition. Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). When, as here, the BIA adopts the findings of the IJ and discusses some of the bases for the IJ's opinion, our review encompasses both decisions. Saravia v. Att'y Gen., 905 F.3d 729, 734 (3d Cir. 2018).

III.

D.G.M. argues that the BIA applied the wrong standard when reviewing the IJ's decision — that is, that the BIA did not review questions of law de novo and that its opinion was "too deferential and brief." D.G.M. Br. 9. We disagree.

To succeed on his CAT claim, D.G.M. had to demonstrate "that it is more likely than not that he . . . would be tortured if removed to [Jamaica]." Sevoian v. Ashcroft, 290 F.3d 166, 174–75 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)). He also needed to show that the torture would be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Failure to meet either prong — likelihood of torture or acquiescence of public officials — is fatal to a claim for CAT protection.

With respect to the second prong, the IJ first "makes a factual finding or findings as to how public officials will likely act in response to the harm the petitioner fears" and then "assesses whether the likely response from public officials qualifies as acquiescence under the governing regulations." Dutton-Myrie v. Att'y Gen., 855 F.3d 509, 516 (3d Cir. 2017). The BIA reviews the first question for clear error and the second question de novo. Id. at 516–17. The BIA did so.

Here, the IJ made findings that the Jamaican government "cooperate[s] with the United States in fighting against drug trafficking and organized crime" and "charge[s] police officers with abuses as well as other government officials with corruption." JA18–19. Based on these findings, the IJ concluded that it was mere "speculation that the Jamaican government could be held responsible or complacent in any potential harm" to D.G.M. JA19.

The BIA explained that it reviewed how public officials will likely act for clear error and "whether the likely response constitutes acquiescence . . . de novo." JA13. The BIA then reviewed the IJ's findings that the evidence in the record showed both "some corruption amongst public officials in Jamaica" and also that "the Jamaican government charges police officers for their abuses and corruption." JA13. The BIA concluded that the IJ correctly determined that D.G.M. had not presented evidence which could show that government officials would be willfully blind or otherwise acquiesce to acts of torture, and agreed with the IJ that D.G.M.'s testimony was "speculative, at best." JA13.

We see no error in the BIA's analysis. It correctly cited the standard of review and did not improperly treat any legal conclusions as factual determinations. The conclusion that no government official could be said to acquiesce in D.G.M.'s torture was fully consistent with the applicable legal standards. And although the BIA's opinion is short, brevity is not error. The BIA "is not required to write an exegesis on every contention, but only to show that it has reviewed the record and grasped the movant's claims." Sevoian, 290 F.3d at 178 (quotation marks and citation omitted). The BIA has done so here.

6

There is no indication that the BIA ignored any relevant evidence with respect to acquiescence. To the contrary, as the BIA and the IJ observed, the country conditions evidence submitted indicates that Jamaica's government is actively opposing criminal activity. See, e.g., JA357–60. And because D.G.M.'s claim regarding "how public officials will likely act in response to the harm the petitioner fears" was speculative, Dutton-Myrie, 855 F.3d at 516, the BIA and the IJ correctly held that D.G.M. did not establish acquiescence.[2]

## IV.

For the foregoing reasons, we will deny D.G.M.'s petition for review.[3]

---

[2] The BIA also agreed with the IJ that D.G.M. had not met his burden of showing that he would be targeted for harm. Because we affirm the BIA's holding with respect to acquiescence, however, we need not reach D.G.M.'s challenge as to the likelihood of harm prong. Nor do we reach D.G.M.'s argument that he was denied due process when the IJ did not retrieve and consider a corroborating letter from the Drug Enforcement Administration "detailing the nature of the threat he faces in Jamaica." D.G.M. Br. 17. This letter relates only to the likelihood of harm prong — that it is more likely than not that D.G.M. will be subjected to torture if returned to Jamaica — and does not implicate acquiescence. And because failure to meet either prong is dispositive of a claim for CAT protection, D.G.M. cannot show "that substantial prejudice resulted" from any alleged due process violation. Fadiga v. Att'y Gen., 488 F.3d 142, 155 (3d Cir. 2007) (quotation marks omitted).

[3] In light of the above, D.G.M.'s pending motion for a remand to the BIA and to stay these proceedings filed on March 11, 2019, is denied as moot.