NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1612
_____

JAVIER GUTIERREZ ZAVALA
a/k/a Javier Moreno Nino,
a/k/a Javier Garcia Lopez,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,

Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A097-897-986)
Immigration Judge: Honorable Walter A. Durling
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 10, 2017

Before: HARDIMAN, SHWARTZ, and ROTH, *Circuit Judges*.

(Filed: November 30, 2017)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Javier Moreno Nino[1] petitions for review of an order of the Board of Immigration Appeals (BIA) denying him withholding of removal and deferral of removal under the Convention Against Torture (CAT). We will deny the petition.

I

A citizen of Mexico, Moreno was first removed from the United States in 2005 following a conviction for alien smuggling. In April of 2008, Moreno rebuffed a recruitment effort by a drug cartel, La Familia Michoacana. Three of Moreno's cousins—Jesus, Miguel, and Jorge—were recruited by the cartel after they were removed from the United States. Jorge joined the cartel, Miguel disappeared, and Jesus was turned over to the cartel by local police in 2008, but escaped by paying them.

In September of 2008, Moreno re-entered the United States and was removed again. A few days following his return to Mexico, Moreno was shot in the back by a cartel member, but he did not report the crime because he feared collusion between the police and the cartel. Moreno then re-entered the United States at the end of 2008 with his cousin Jesus. In 2011, Jesus returned to Mexico and disappeared.

In 2015, Moreno was apprehended, his prior deportation order was reinstated, and he was later referred to an Immigration Judge (IJ) for withholding only proceedings.

---

[1] Petitioner advises that Moreno is his true surname, contrary to the caption.

While the IJ found Moreno credible, he declined to grant withholding of removal based on either past persecution or the Convention Against Torture (CAT).

Regarding past persecution, the IJ found that "deportees who avoided recruitment by the gangs" did not constitute a protected class. App. 10. The IJ also observed that "no one from the gang ever articulated" that they were motivated by Moreno's deportee status, and that it seemed likely Moreno "just happened to be a deportee when he was targeted." App. 11. As for CAT protection, the IJ determined that while police corruption "is an ongoing problem," the Mexican government's "concerted efforts over the years to combat organized crime" precluded a finding of acquiescence or willful blindness to torture by gangs. App. 12.

A one-member panel of the BIA affirmed the IJ's decision on both claims. The panel found no clear error in the IJ's findings of fact regarding why Moreno was targeted by gangs. It further agreed with the IJ that Moreno had not shown the Mexican government was likely to acquiesce to torture. This petition for review followed.

## II[2]

"[W]e review both the decisions of the IJ and the BIA . . . [where] the language of the BIA's opinion directly states that the BIA is deferring to the IJ, or invokes specific aspects of the IJ's analysis and factfinding in support of the BIA's conclusions." *Voci v. Gonzales*, 409 F.3d 607, 612–13 (3d Cir. 2005). In most agency appeals such as this one,

---

[2] The BIA had jurisdiction pursuant to 8 C.F.R. § 1208.31(e). We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a).

3

we uphold any factual finding "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Lin-Zheng v. Att'y Gen.*, 557 F.3d 147, 155 (3d Cir. 2009) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). Ordinarily, to reverse the agency's factual findings, "we must find that the evidence not only *supports* that conclusion, but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1.

In this case, however, the bases on which we may grant Moreno relief are narrowed by 8 U.S.C. § 1252(a)(2)(C), which limits our jurisdiction respecting orders of removal against aliens who are removable because they have committed aggravated felonies. We may review such orders only for "constitutional claims or [errors] of law." *Id.* § 1252(a)(2)(D). Moreno's conviction for transporting aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) qualifies under 8 U.S.C. § 1101(a)(43)(N), so we may consider only "pure questions of law and . . . issues of application of law to fact, where the facts are undisputed and not the subject of challenge." *Kamara v. Att'y Gen.*, 420 F.3d 202, 211 (3d Cir. 2005). Neither party, however, has addressed Moreno's petition under that standard. So, while we are mindful that § 1252(a)(2)(C)'s limitation on the scope of our review is jurisdictional (and thus not waived by the government's failure to invoke it), we also explain why Moreno's claims would fail under the substantial evidence standard to which the parties have actually directed their arguments.

III

A

We first consider Moreno's claim of persecution on a protected ground. Moreno insists the IJ erred in concluding that "deportees from the United States," Zavala Br. 20, or "deported young males," Zavala Br. 13, do not constitute a "particular social group" under 8 U.S.C. § 1231(b)(3)(A). But even had that not been the case, the IJ found that Moreno failed to show that his status as a deportee motivated the cartel to harm him. To claim persecution on a protected ground, Moreno has the burden to show his membership in his alleged particular social group was "one central reason why he was or will be targeted for persecution." *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684–85 (3d Cir. 2015) (citation and internal quotation marks omitted). Though Moreno presented evidence that deportees are sometimes targeted for recruitment by gangs and said he knew a number of deportees who were so targeted, he also testified that "no one from the gang ever articulated" a desire to target him based on his deportee status. App. 11. The IJ further noted that the record did not suggest "the pool of candidates" for gang recruitment was limited to deportees, rather than "young males" generally. App. 11. We note that the IJ's determination that Moreno's deportee status was not a central reason for any persecution was not unreasonable. And we decline to hold the IJ committed legal error in the process of coming to that conclusion.

B

To prevail on his CAT claim, Moreno must show that it is "more likely than not" that he will face intentional and wrongful "severe physical or mental pain or suffering . . . by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of" him. *Kamara v. Att'y Gen.*, 420 F.3d 202, 213 (3d Cir. 2005) (citations omitted). In assessing acquiescence, an IJ "must conduct a two-part analysis. First, the IJ makes a factual finding . . . as to how public officials will likely act in response to the harm the petitioner fears. Next, the IJ assesses whether the likely response from public officials qualifies as acquiescence under [the applicable legal standards]." *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017).

Moreno claims that his testimony and supporting documents demonstrated acquiescence, notwithstanding the fact that Mexico's official policy opposes the cartels. His theory here is the same as it was before the agency: Moreno points to country conditions showing that official acquiescence and participation in torture is, broadly speaking, a significant problem in Mexico, and to his own testimony that the local police had kidnapped his cousin Jesus before turning him over to the cartel. Presumably, Moreno fears that if he is returned to Mexico in 2017, he will be treated as Jesus was in 2008.

Moreno is correct that such "[c]ircumstantial evidence may establish acquiescence to targeted acts of violence even when the government has an official policy or is engaged in a campaign of opposition against the entity the applicant fears." *Myrie*, 855

6

F.3d at 516. But an applicant who proceeds on that theory still bears the burden of persuading the IJ. Our review of the agency's findings in Moreno's case is complicated by the fact that the IJ, who did not have the benefit of our decision in *Myrie*, did not explain his decision in terms of the clarified two-part analysis that we announced in that case. That complication does not warrant a remand, however.

In reviewing the IJ's decision, we start from the premise that, like all agency action, it "is entitled to a presumption of regularity, and it is the petitioner's burden to show that the [IJ]" erred in considering his case. *See Kamara v. Att'y Gen.*, 420 F.3d 202, 211–12 (3d Cir. 2005). Absent some indication to the contrary, we presume that agency adjudicators applied the correct legal standards, *Pilica v. Ashcroft*, 388 F.3d 941, 949–50 (6th Cir. 2004), and reviewed the relevant record materials, *Abdulai v. Ashcroft*, 239 F.3d 542, 550 (3d Cir. 2001).

Here, the IJ considered the relevant circumstantial evidence of possible acquiescence, noting Moreno's testimony that "Jesus told [Moreno] that when he returned to Mexico the police kidnapped him and turned him over to the cartel."[3] App. 9. Moreno's argument that the IJ did not consider the "multiple articles and reports indicating the corruption of the Mexican law enforcement and their active participation

---

[3] While the BIA summarized Moreno's direct testimony on acquiescence as "[a]ccording to him, there is corruption in Mexico and his cousins disappeared in Mexico," App. 5, the abbreviated decision also affirmed the IJ's acquiescence determination "for the reasons stated in his decision," App. 6, which permits us to review and uphold the IJ's reasoning.

7

with the cartels," Zavala Br. 10, is belied by the fact that the IJ accepted those materials into evidence and agreed in his decision that "the Mexican police and government officials have proven corrupt over the years, it is an ongoing problem," App. 12. Despite that evidence, the IJ determined that Moreno had failed to meet his burden to show a likelihood of acquiescence.

Given the relatively narrow theory of acquiescence that Moreno presented to the agency, and the absence of any analysis by the IJ of whether a particular government action would or would not meet the applicable legal standard, we read the IJ's decision as implicitly finding that Moreno did not demonstrate any likelihood that the local police would treat *him* as they treated Jesus. To the extent we have any uncertainty about that conclusion, the presumption of regularity resolves it in favor of the IJ's decision. Under the circumstances of this case, we presume that the IJ based his determination on a factual finding he was required to make, grounded in the evidence he was required to consider, rather than on a *sub silentio* legal analysis. Moreno has not pointed to anything in the record that suggests otherwise, and on de novo review, we discern no error of law.

Although we lack jurisdiction to review the IJ's factfinding, we note that, even if this case were subject to more generous appellate review, we would not conclude on this record that the IJ's decision was not based on an adequate review of the record, or not supported by substantial evidence. Moreno's evidence of possible acquiescence—much of which is dated or general in nature—could not compel the conclusion, contrary to the

IJ's implicit finding, that a public official will permit the cartels to kill or otherwise torture Moreno.

*     *     *

For the reasons stated, we will deny Moreno's petition for review.