NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1166
_____

JASON ANTHONY WRIGHT,
                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                    Respondent

On Petition for Review of an Order of the Board of Immigration Appeals
(Agency No. A206-473-310)
Immigration Judge:  Mirlande Tadal
_____

Argued March 11, 2020

Before:  McKEE, AMBRO, and PHIPPS, *Circuit Judges*.

(Filed: October 16, 2020)

Ingrid D. Johnson            **[ARGUED]**
Faegre Drinker Biddle & Reath
105 College Road East
P.O. Box 627, Suite 300
Princeton, NJ 08542
        *Counsel for Petitioner*


Imran R. Zaidi            **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Counsel for Respondent*

_____

OPINION[*]
_____

PHIPPS, *Circuit Judge*.

Jason Anthony Wright, a native and citizen of Jamaica, petitions for review of the denial of his request for protection under the Convention Against Torture (CAT). Wright was admitted to the United States in 2007 on a nonimmigrant visa, and he overstayed. In 2014, the Department of Homeland Security initiated removal proceedings against him, and Wright conceded removability. In 2016 and 2017, Wright was convicted in New Jersey state court of three drug crimes involving the manufacture and distribution of or intent to manufacture heroin.

At the removal proceedings, Wright sought asylum, withholding of removal, and CAT protection on the grounds that he would suffer violence as a bisexual man upon his return to Jamaica. Finding that Wright had been convicted of at least one particularly serious crime, the Immigration Judge (IJ) determined that by statute Wright was ineligible for all forms of relief except CAT deferral of removal. *See* 8 U.S.C. § 1231(b)(3)(B); *see also* 8 C.F.R. § 1208.16(d)(2). For that request, the IJ concluded that Wright did not demonstrate that he would be personally at risk of torture or that the government would consent or acquiesce to his torture. Wright administratively appealed

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

only the denial of the CAT deferral, and the Board of Immigration Appeals (BIA) issued a final order of removal that adopted and affirmed the IJ's decision.

In petitioning for review of the BIA's order, Wright presents only legal challenges, which receive *de novo* review. *See Fadiga v. Att'y Gen.*, 488 F.3d 142, 153-54 (3d Cir. 2007). In exercising jurisdiction over Wright's petition, the scope of review consists of the BIA's final order of removal, *see* 8 U.S.C. § 1252(a), but it may include portions of the IJ's opinion "only where the BIA has substantially relied on that opinion." *Camara v. Att'y Gen.*, 580 F.3d 196, 201 (3d Cir. 2009); *see also S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 543 (3d Cir. 2018); *cf. Pieschacon-Villegas v. Att'y Gen.*, 671 F.3d 303, 310 (3d Cir. 2011) ("When the BIA issues its own decision on the merits, rather than a summary affirmance, we review its decision, not that of the IJ."). For the reasons below, we will deny Wright's petition for review.

## I.

Wright argues that the BIA and the IJ ignored certain evidence and overvalued other evidence. According to Wright, those constitute legal errors for failing to consider "all evidence relevant to the possibility of future torture," 8 C.F.R. § 1208.16(c)(3), and for violating his due process rights to a full factfinding and an individualized determination.

Wright contends that the BIA and the IJ ignored country reports and other evidence supporting a likelihood that he would be tortured as a bisexual male upon return to Jamaica. But neither the BIA nor the IJ ignored that evidence. Wright premises much of his argument on the BIA's citation to "just one out-of-context phrase from a larger

2

report" about the lack of state persecution.  But the BIA did consider more completely the country reports he presented, as evidenced by the BIA's acknowledgment of the "harassment and violence directed at the LGBT community in Jamaica" described in those reports.  Decision of the BIA at 2 (AR 4).  Similarly, the IJ stated that "[a]ll admitted evidence has been considered in its entirety," and noted that "the country conditions reports highlight various societal abuses against the LGBT community." Decision and Order of Immigration Judge at 2, 13 (AR 32, 43).  Thus, Wright fails to establish that the IJ and BIA ignored evidence or otherwise violated due process.  *See Pieschacon-Villegas*, 671 F.3d at 310 (explaining that while the BIA cannot ignore evidence, it "has [the] discretion to hold that . . . evidence is insufficient to meet [petitioner's] burden"); *Zhu v. Att'y Gen.*, 744 F.3d 268, 272 (3d Cir. 2014) (explaining that the BIA does not need to "expressly parse each point or discuss each piece of evidence presented").

Wright further submits that in rejecting his assertion of a likelihood of future torture, the BIA erred by adopting the IJ's decision, which considered an abuse-free time during Wright's childhood in Jamaica.  The likelihood-of-future-torture analysis involves "all evidence relevant to the possibility of future torture," including evidence of "past torture inflicted upon the applicant."  8 C.F.R. § 1208.16(c)(3).  The IJ dutifully accounted for past violence against Wright:

> [Wright] testified that he was bullied and beaten in primary school on one occasion.  He was also molested by his cousin between the ages of nine and 11, but has not been subjected to any other form of harm in Jamaica since.

3

Decision and Order of Immigration Judge at 13 (AR 43). The completeness of the IJ's review – noting both instances of violence and abuse-free periods – does not constitute legal error because the nature and frequency of past abuse is relevant to the possibility of future torture.

## II.

Wright next asserts that the BIA incorrectly imposed a heightened legal standard for proving torture. Wright correctly contends that he must show a more-likely-than-not risk of torture upon removal. *See Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017) (explaining standard); 8 C.F.R. 1208.16(c)(2). But from there he misconstrues the record to suggest that the BIA required him to show that "individuals will be looking for him," AR 3. The BIA analyzed whether people would be looking for him because Wright argued that he would be sought out and tortured because of his bisexuality. Thus it was Wright, not the BIA, who attempted to make that potentially heightened showing. The BIA for its part applied the correct 'more likely than not' standard.

\* \* \*

In rejecting Wright's petition for CAT deferral, the BIA did not – independently or through adoption of the IJ's decision – commit an error of law in evaluating whether Wright would experience a likelihood of future torture.[1] The BIA did not perform a

---

[1] Because Wright fails in challenging the likelihood of torture, it is unnecessary to evaluate his challenge to governmental acquiescence. *See Green v. Att'y Gen.*, 694 F.3d 503, 507-08 (3d Cir. 2012) (requiring for CAT deferral that an alien demonstrate a likelihood of future harm and either governmental involvement or governmental acquiescence); *see also Quinteros v. Att'y Gen.*, 945 F.3d 772, 786 (3d Cir. 2019); *Myrie*, 855 F.3d at 515.

"selective rather than plenary review" of the evidence. *Huang v. Att'y Gen.*, 620 F.3d 372, 388 (3d Cir. 2010). Nor did the BIA misapply governing legal standards or deny him due process. Thus, we will deny his petition.