**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1188
_____

MOHAMED KAMARA,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA
_____

On Petition for Review from the
Board of Immigration Appeals
(Agency No. A075-059-694)
Immigration Judge: Kuyomars Q. Golparvar
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 16, 2021
_____

Before: CHAGARES, BIBAS, and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 24, 2021)
_____

OPINION[*]
_____

---

[*]     This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Mohamed Kamara petitions this Court to reverse the denial of his application for protection under the Convention Against Torture (the "CAT") by the Immigration Judge ("IJ") and the Board of Immigration Appeals (the "BIA," and collectively with the IJ, the "agency"). Because the agency's findings are supported by substantial evidence, we will deny the petition.

I.

Kamara is a citizen of Sierra Leone who came to the United States as a refugee when he was eight years old. Kamara never became a lawful permanent resident and remained in refugee status. The Department of Homeland Security began removal proceedings against Kamara, alleging that he was removable on the basis of certain criminal convictions. Kamara applied for deferral of removal under the Convention Against Torture.[1] He asserted that he likely will be imprisoned upon return to Sierra Leone and that the inhumane prison conditions there constitute torture under the CAT.[2] The IJ denied relief and the BIA affirmed.

---

[1] Kamara applied to adjust status under 8 U.S.C. § 1159. The IJ pretermitted this application, finding that it was precluded by Kamara's drug trafficking conviction. Kamara also claimed derivative United States citizenship through his mother, but the IJ concluded that because Kamara never adjusted to permanent resident status before his eighteenth birthday, he could not derive citizenship based on the applicable law when his mother naturalized in 2005. Kamara does not challenge either of these holdings on appeal.

[2] Kamara also asserted a fear of return based on his uncle's military activity. Kamara did not appeal the IJ's denial of CAT protection on that basis.

2

## II.[3]

In evaluating claims under the CAT, Immigration Judges must use the well-established framework from Myrie v. Att'y Gen., 855 F.3d 509, 516 (3d Cir. 2017).  At the outset of this analysis, IJs answer a factual question:  "what is likely to happen to the [noncitizen] if removed[?]"  Id.  Here, the IJ found that Kamara was not likely to be imprisoned upon return to Sierra Leone and the BIA adopted that finding.  We review that factual determination for substantial evidence.  See Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020).  Under that standard, the agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

Kamara asserts that he is likely to be imprisoned upon return to Sierra Leone due to the country's common practice of detaining deportees with criminal records, but neither his testimony nor the country conditions evidence compels that conclusion.  Kamara submitted an expert report describing prison conditions for some deportees in Sierra Leone.  Deportees in detention reportedly experienced poor sanitary conditions and a lack of access to regular food and medical attention, and several people had to pay bribes to leave detention.  Even accepting everything in the report as true, however, the report does not show that Kamara will be imprisoned upon his return to Sierra Leone.  The report does not assert that Sierra Leone has a practice of detaining deportees with criminal convictions; it simply details several instances where deportees were detained.

---

[3] We have jurisdiction to review the BIA's decision pursuant to 8 U.S.C. § 1252(a)(1).

3

And in none of these cases does the report link the deportees' detention with their criminal convictions in the United States. The other country conditions evidence likewise does not support Kamara's assertion. The State Department Human Rights Report for Sierra Leone details the harsh and inhumane conditions of prisons in that country, but does not indicate that deportees, or people with criminal convictions abroad, are likely to be detained. Country conditions, on their own, can constitute sufficient evidence to support a finding of future torture under the CAT. See Pieschacon-Villegas v. Att'y Gen., 671 F.3d 303, 313 (3d Cir. 2011), abrogated on other grounds by Nasrallah, 140 S. Ct. at 1689. But despite how Kamara's counsel characterizes the reports, there is nothing in these reports to compel the finding that Kamara is likely to be detained in Sierra Leone, and so the agency's finding here is supported.

A noncitizen's credible testimony on its own can also constitute sufficient factual evidence for a CAT claim. See 8 C.F.R. § 208.16(b); Quinteros v. Att'y Gen., 945 F.3d 772, 790 (3d Cir. 2019) (McKee, J., concurring). In this case, Kamara's testimony about why he believed he might be imprisoned was entirely based on the reports described above. Because the reports do not support a finding that Kamara is likely to be imprisoned, Kamara's testimony likewise does not compel such a finding.[4] Kamara did

---

[4] The same is true for Kamara's assertion that deportees are subject to harassment, stigmatization, and violence from the "masses" upon return to Sierra Leone. Neither the reports nor Kamara's testimony support a finding that he will be subjected to such treatment, and so even assuming that the treatment could constitute torture under the CAT, Kamara has not met his burden.

not meet his burden as to this threshold element of the <u>Myrie</u> analysis, so we do not address his arguments about the agency's error as to the other prongs.

III.

For the foregoing reasons, we will deny Kamara's petition for review.