**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3283
_____

JOSE EDUARDO LOPEZ-SANCHEZ,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A216-647-080)
Immigration Judge: Jack H. Weil
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 19, 2021

CHAGARES, Chief Judge, PHIPPS and COWEN, Circuit Judges

(Opinion filed: April 1, 2022)
_____

OPINION[*]
_____

PER CURIAM

    Jose Eduardo Lopez-Sanchez, proceeding pro se, petitions for review of a decision

of the Board of Immigration Appeals ("BIA") dismissing his appeal of a decision of an

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Immigration Judge ("IJ") denying his applications for relief from removal. For the reasons that follow, we will deny the petition for review.

Lopez-Sanchez is a native and citizen of Mexico. He entered the United States in 2012 at the age of seventeen. In 2020, the Department of Homeland Security issued a notice to appear charging that he was removable for being present in the United States without having been admitted or paroled. Through counsel, Lopez-Sanchez conceded that he was removable and applied for asylum, withholding of removal, and relief under the Convention Against Torture.

At his hearing, Lopez-Sanchez testified that in 2011 he attended a party in the community where his uncle lived, which was about a half hour drive from his own home in Guanajuato, Mexico. After his uncle had an altercation with someone at the party, Lopez-Sanchez and his uncle left. As they were driving, they saw two cars blocking the road. Lopez-Sanchez's uncle told Lopez-Sanchez to run and hide. Lopez-Sanchez ran, heard bullets ricocheting in his direction, and saw the shooters from afar. His uncle ran the opposite way. Lopez-Sanchez stated that the shooting was probably related to the altercation, but he did not know who that involved.

Lopez-Sanchez never spoke to his uncle again. Three days after the incident, his father arranged to send him to the United States. Before Lopez-Sanchez left, his father told him that vehicles were driving by their home. No one threatened or harmed Lopez-Sanchez's parents or siblings after he left. Lopez-Sanchez, however, was unable to enter the United States. He then lived with his sister in Michoacan, Mexico, where he stayed

2

inside and was not threatened or harmed. He learned then that his uncle was involved in organized crime. In 2012, Lopez-Sanchez entered the United States without inspection.

Lopez-Sanchez also testified that in December 2019 the Jalisco New Generation Cartel kidnapped and killed his uncle, who belonged to the rival Santa Rosa Cartel. His uncle's body was dismembered, and photographs were posted on Facebook. The Jalisco Cartel left a note with the body that included a list of persons that the group planned to harm. Lopez-Sanchez did not know the persons on the list and his name was not on it.

Lopez-Sanchez stated that his uncle was like a second father to him, that they spent a lot of time together, and that persons in the community viewed them as family. He did not know if anyone had harmed his uncle's children or his aunt. Lopez-Sanchez feared that the gang members who killed his uncle might have gotten his name from his uncle and that they will come for him if he is removed.

The IJ found Lopez-Sanchez credible but ruled that he had failed to prove that he has a well-founded fear of persecution on account of a protected ground, as required for asylum, or meet the higher burden of proof required for withholding of removal. The IJ stated that Lopez-Sanchez had never been threatened or harmed in Mexico aside from the 2011 incident when his uncle appears to have been the target, and that Lopez-Sanchez did not know who was involved in that incident. The IJ found no evidence showing that the 2011 incident and his uncle's murder were connected or that the Jalisco Cartel knew about Lopez-Sanchez, and noted that it was not known why his uncle was harmed aside from the fact that he was involved with a rival organized crime group.

The IJ concluded that there was insufficient evidence showing that anyone was

3

interested in persecuting or torturing Lopez-Sanchez. He also rejected Lopez-Sanchez's claim that he would be persecuted on account of his membership in a particular social group – family members of his uncle – because no other family members had been harmed or threatened. Regarding Lopez-Sanchez's CAT claim, the IJ stated that he had not shown that the government would torture him or that it would be aware of harm and knowingly fail to protect him.

On appeal, the BIA ruled, for substantially the same reasons stated by the IJ, that Lopez-Sanchez had not met his burden of proof for the relief he sought. It upheld the IJ's determinations that Lopez-Sanchez did not establish past persecution or a well-founded fear of persecution on account of a protected ground – race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1158(b)(1); 8 U.S.C. § 1101(a)(42).[1] The BIA stated that Lopez-Sanchez had not shown a nexus between his past or feared harm and a protected ground.[2]

The BIA also upheld the denial of CAT relief. It ruled that the IJ did not clearly err in predicting the likelihood of harm to Lopez-Sanchez, even considering the country

---

[1] The IJ did not directly address past persecution, but he appears to have stated that, if Lopez-Sanchez was persecuted, it was not on account of a protected ground. See IJ's Dec. at 10.

[2] The IJ also concluded that Lopez-Sanchez's asylum application was untimely and that he had not shown that he could not relocate in Mexico or that the government was unable or unwilling to protect him. The BIA did not reach these issues.

conditions. The BIA recognized evidence of corruption and cartel violence in Mexico but stated that it did not show that Lopez-Sanchez faced an individualized risk of harm.[3]

We have jurisdiction over Lopez-Sanchez's petition for review pursuant to 8 U.S.C. § 1252(a). We review the BIA's factual determinations, including whether Lopez-Sanchez suffered past persecution or has a well-founded fear of persecution on account of a protected ground, for substantial evidence. See Ndayshimiye v. Att'y Gen., 557 F.3d 124, 128, 131 (3d Cir. 2009). Under this standard, we uphold such determinations "unless the record evidence would compel any reasonable factfinder to conclude to the contrary." Id. at 128. The same standard applies to factual challenges to CAT orders. Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020).

Lopez-Sanchez argues that he established past persecution and a well-founded fear of persecution on account of his membership in the particular social group of family members of his uncle. He contends that this group is a cognizable particular social group, that he needed to flee Mexico after he witnessed gang members shoot at his uncle in 2011, and that he will be persecuted in light of the killing of his uncle in 2019.

The IJ and the BIA did not address whether family members of Lopez-Sanchez's uncle constitutes a cognizable particular social group. It is unnecessary to consider this question here because substantial evidence supports the determination that Lopez-Sanchez did not establish that he was or will be harmed on account of his membership in such a group. See Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 340-45 & n.10, 348 (3d

---

[3] The BIA also upheld the IJ's denial of voluntary departure. This ruling is not at issue.

Cir. 2008) (discussing burden of proof for asylum and withholding of removal and finding it unnecessary to decide whether a particular social group was cognizable).[4]

Lopez-Sanchez's testimony supports the conclusion that the Jalisco Cartel appears to have killed his uncle because he was in a rival drug trafficking organization. There is no evidence that other family members have been harmed. To the extent Lopez-Sanchez contends that he is at risk because he was present during the incident in 2011 and was close with his uncle, as the BIA and the IJ recognized, the record does not reflect that the 2011 incident and 2019 murder were related or that the Jalisco Cartel is interested in him. The record does not compel a conclusion contrary to that reached by the BIA.

Lopez-Sanchez also argues that he satisfied his burden of proof for CAT relief. He asserts that gang members will kill him because they will think he returned to Mexico for revenge due to his uncle's murder. The record, however, does not reflect that gang members know Lopez-Sanchez or compel the conclusion that he will likely be harmed if removed. See Myrie v. Att'y Gen., 855 F.3d 509, 516 (3d Cir. 2017) (addressing burden of proof for CAT relief).[5]

No relief is due on Lopez-Sanchez's additional arguments. He contends that the IJ did not notify him that corroborating evidence would be required to support his claims, but the IJ did not reject his claims based on a lack of corroborating evidence. Similarly,

---

[4] We have, however, encouraged the IJ and BIA to decide the cognizability of a particular social group before addressing the nexus requirement. Serrano-Alberto v. Att'y Gen., 859 F.3d 208, 219 n.5 (3d Cir. 2017).

[5] To the extent Lopez-Sanchez states in his brief that he was threatened by the same gang member who killed his uncle, see Brief at 9, he did not testify to any such threat.

Lopez-Sanchez asserts that the IJ and BIA erred in concluding that he was deportable based on a conviction for driving under the influence, but he was not found removable on this basis. Insofar as Lopez-Sanchez asserts that the IJ erred in ruling that his asylum application was untimely, we lack jurisdiction to review this ruling. Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003). To the extent he states that he belongs to other particular social groups, he has forfeited any issues in this regard by failing to develop them in his brief. See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 145-47 (3d Cir. 2017).

Accordingly, we will deny the petition for review.