**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 23-2799

———————

JAMES AYUR GARANG,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA

———————

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A079-822-651)
Immigration Judge:  Jack H. Weil

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 1, 2024

———————

Before:  HARDIMAN, PHIPPS, and FREEMAN, *Circuit Judges*

(Filed: November 5, 2024)

———————

OPINION[*]

———————

PHIPPS, *Circuit Judge*.

Following his federal drug conspiracy conviction, a Sudanese refugee and former child soldier who has resided in the United States for twenty-three years was ordered removed.  Through this petition, he now challenges that order, as well as the order denying

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

his request for relief from removal under the Convention Against Torture. For the reasons below, we will deny the petition.

## I. BACKGROUND

On May 23, 2001, at age twenty-two, James Ayur Garang entered the United States from Kenya as a refugee of the Sudanese Civil War. The United States granted entry to Garang on the grounds that he had been impressed into military service for the rebel army of South Sudan for two years starting around the age of fifteen. In 2011, South Sudan seceded from Sudan and was recognized as a sovereign, independent nation by the United States. Afterward, in November 2013, Garang applied to become a lawful permanent resident, but in that green-card application, he identified South Sudan as both his country of birth and his country of citizenship. His application was granted, and Garang received lawful-permanent-resident status in 2014.

Five years later, in August 2019, Garang pleaded guilty to a federal charge of conspiracy to distribute methamphetamine in South Dakota. *See* 21 U.S.C. §§ 841(a)(1), 846. For that offense, Garang received a 120-month prison sentence, which he began serving at the Moshannon Valley Correctional Institute in Philipsburg, Pennsylvania.

Based on that conviction, in September 2020, the Department of Homeland Security charged Garang with removability through service of a Notice to Appear, commonly abbreviated as 'NTA.' As Garang had done on his green-card application, the NTA identified him as a native and citizen of South Sudan. After the NTA was docketed with the Immigration Court in York, Pennsylvania, Garang's sentence was reduced, and once it expired on or about January 20, 2023, Garang was transferred to Immigration and Customs Enforcement custody.

During the removal proceedings, the Immigration Judge determined that, despite his being a lawful permanent resident, Garang was subject to removal because of his conviction for a drug conspiracy offense. *See* 8 U.S.C. § 1227(a)(2)(B)(i). To obtain relief from removal, Garang applied for asylum, withholding of removal, and deferral of removal. The Immigration Judge, however, determined that Garang was ineligible for asylum and withholding of removal because his offense constituted a "particularly serious crime." *Id.* § 1231(b)(3)(B); *see id.* §§ 1158(b)(2)(A)(ii), (B)(i); *id.*§§ 1101(a)(43)(B), (U); 21 U.S.C. § 802(6); *id.* § 812; 18 U.S.C. § 924(c)(2). As to the request for deferral of removal under the Convention Against Torture, the Immigration Judge initially rejected Garang's claim based on his consideration of Sudan – not South Sudan – as the country of removal. Later, on remand from a partially successful administrative appeal, the Immigration Judge held a hearing on Garang's CAT deferral claim with respect to removal to either Sudan or South Sudan.

In an effort to make the required showing for CAT deferral – that it is more likely than not that he would be tortured if removed, *see Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017) (quoting 8 C.F.R. § 1208.16(c)(2)); *see also* 8 C.F.R. § 1208.17(a) (incorporating the standard set forth by 8 C.F.R. § 1208.16(c)) – Garang testified about his fears of torture in Sudan and South Sudan. He stated that he is a Christian and a member of the Dinka tribe, and he initially identified his place of birth as being in the northern part of Sudan. Garang also recounted that he had fled Sudan for Ethiopia as a young boy during the outbreak of a civil war, in which his father fought and died for the rebels of South Sudan. He further averred that he was lured back to Sudan at the age of fifteen by a promise to be reunited with his family, but upon his return, he was instead impressed into the rebel army of South Sudan. Relatedly, Garang stated that he has the same surname as a South

3

Sudanese rebel leader, John Garang, and that after fighting for the rebel army for about two years in a region that is presently within the bounds of South Sudan, he deserted and escaped to Kenya. Thereafter, he helped publicize the rebel army's use of child soldiers.

Based on that account, Garang sought CAT deferral. He argued that the government of Sudan would either torture him or acquiesce in torture carried out by similarly motivated private actors for several reasons. First, he explained, both he and his father fought against Sudan during the civil war, and because he shares a surname with a South Sudanese rebel leader, his status as a former member of the rebel army was more easily detectable. In addition, he averred, Sudan is hostile to Christians and members of the Dinka tribe. With respect to the likelihood of torture in South Sudan, Garang asserted that its government would either torture him or acquiesce in his torture because he deserted the rebels and helped publicize their use of child soldiers.

Upon considering this evidence, the Immigration Judge concluded that it was not enough to satisfy Garang's burden of proving a likelihood of torture in either country. In denying CAT deferral, the Immigration Judge was to select a country of removal, *see* 8 C.F.R. § 1240.10(f), and, without a designation from Garang as to the country of removal, the Immigration Judge ordered him removed to Sudan or alternatively South Sudan.

In an administrative appeal, Garang raised three challenges to that ruling. First, he claimed that because the NTA, as the charging document, identified his country of citizenship as South Sudan, DHS was obligated to establish that he was a citizen of that country, and DHS failed to do so. Second, on the implicit assumption that an alien cannot be removed to a country in which he or she does not have citizenship, Garang argued that there was insufficient evidence to support a finding of his Sudanese citizenship because,

4

contrary to his earlier testimony, Garang posited that he was likely born in present-day South Sudan. Third, Garang disputed the Immigration Judge's conclusion that Garang would not likely be tortured if removed to either country.

The Board of Immigration Appeals rejected each argument. The BIA viewed Garang's first argument related to the NTA's identification of South Sudan as his native country and country of citizenship as misplaced because the relevant issue was alienage – not those specific details. Similarly, in response to Garang's second challenge, the BIA relied on Garang's testimony that he was born in some part of Sudan, which could today be part of South Sudan, as support for his removal to those countries. Garang's CAT claim fared no better before the BIA: it adopted the Immigration Judge's conclusion that Garang had not met his burden to show a particularized risk of torture in Sudan or South Sudan.

Through a timely petition for review of the final order of removal, Garang has invoked this Court's exclusive appellate jurisdiction to renew those three contentions. *See* 8 U.S.C. §§ 1252(a)(4)–(5); *id.* § 1252(b)(9) (consolidating "all questions of law and fact . . . arising from any . . . proceeding brought to remove an alien from the United States" into one petition for review); *cf. Nasrallah v. Barr*, 590 U.S. 573, 582–84 (2020) (holding that the criminal-alien bar of 8 U.S.C. § 1252(a)(2)(C), which limits judicial review of final orders of removal against criminal aliens, does not apply to CAT claims).

## II. DISCUSSION

### A. The NTA's Designation of South Sudan as Garang's Native Country and Country of Citizenship Does Not Require DHS to Prove Either Fact as a Prerequisite to Establishing Removability.

Garang argues that because the NTA, as the document charging him with removal, designated his native country and country of citizenship as South Sudan, DHS had to establish those facts as predicates to removing him. That is wrong as a matter of law, as

5

the BIA recognized. The baseline requirement for removal is status as an 'alien,' meaning a person who is neither a citizen nor a national of the United States. *See* 8 U.S.C. §§ 1101(a)(3), (22). As a refugee green-card holder, Garang is neither a citizen nor a national, so that requirement was met. Nor does the NTA's designation of South Sudan as Garang's native country and country of citizenship independently impose a burden on DHS to establish those facts. Although a regulation requires that an NTA contain those pieces of information, that same regulation is express that "[f]ailure to provide any of these items shall not be construed as affording the alien any substantive or procedural rights." 8 C.F.R. § 1003.15(c); *cf.* 8 U.S.C. § 1229(a)(1)(A)–(G) (setting forth the required contents for NTAs and omitting any reference to the alien's native country or country of citizenship). Thus, on *de novo* review of the agency's legal conclusion, *see Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 93 (3d Cir. 2021) (citing *Myrie*, 855 F.3d at 515–16), the NTA's designation of South Sudan as Garang's native country and country of citizenship does not require DHS to prove either designation in removal proceedings.

**B. It Was Permissible for the Agency to Designate Sudan and Alternatively South Sudan as Countries of Removal for Garang.**

Garang next argues that he can be removed only to a country of which he is a citizen. But as the BIA concluded, that is an incorrect expression of the law. Because he was a lawful permanent resident, Garang had the option of choosing his removal destination from the countries made eligible by the Immigration and Nationality Act. *See* 8 U.S.C. § 1231(b)(2)(A). When Garang did not do so, the Immigration Judge was then required to select the country for removal and was authorized to identify another eligible country in the alternative. *See* 8 C.F.R. § 1240.10(f). A country could be designated as a removal destination for several reasons, such as if it was the alien's residence before entry to the United States, *see* 8 U.S.C. § 1231(b)(2)(E)(iii); if it had sovereignty over the alien's

6

birthplace at the time of birth, *see id.* § 1231(b)(2)(E)(v); or if it has present sovereignty over the alien's place of birth, *see id.* § 1231(b)(2)(E)(vi). And on substantial-evidence review of CAT-related claims brought by deferral applicants, *see Alexander-Mendoza v. Att'y Gen.*, 55 F.4th 197, 206–07 (3d Cir. 2022), a reasonable adjudicator would not be compelled to disagree with the designation of Sudan and South Sudan as eligible removal countries because Garang testified that he was born in Sudan, and had lived in present-day South Sudan while fighting for the rebels, *see id.* at 207 (citing 8 U.S.C. § 1252(b)(4)(B)).

### C. Substantial Evidence Supports the Denial of CAT Deferral.

Garang also argues that the agency erred in denying his request for CAT deferral. One of the requirements for such relief is a showing of likely torture in the designated country of removal, either directly by the government or through its acquiescence. *See Myrie*, 855 F.3d at 515 (citing 8 C.F.R. § 1208.16(c)(2)); *see also* 8 C.F.R. § 1208.17(a). The Immigration Judge considered each of the five identified bases for Garang's stated fears of torture in Sudan: he is a Christian, he is a member of the Dinka tribe, he fought for the South Sudanese rebels, his father fought for the South Sudanese rebels, and he shares the last name of a prominent rebel leader. The Immigration Judge also considered Garang's two stated bases for a fear of torture in South Sudan: his defection from the rebel army and his role in publicizing the rebels' use of child soldiers. Ultimately, however, the Immigration Judge found that any risk of torture that Garang faced was not particularized to him and that many of his fears followed a hypothetical chain of events, each link of which Garang had not proven. The BIA adopted the Immigration Judge's findings, which are supported by substantial evidence because a reasonable adjudicator would not be compelled to conclude on this record that either country would torture or acquiesce to the

torture of Garang based on the attributes he identifies.  *See Alexander-Mendoza*, 55 F.4th at 207 (citing 8 U.S.C. § 1252(b)(4)(B)).

### III. CONCLUSION

For the foregoing reasons, we will deny Garang's petition.