NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-1994 & 22-1401
_____

JOHN SMITH,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A072-376-078)
Immigration Judge:  Kuyomars "Q" Golparvar
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 21, 2023

Before:  HARDIMAN, PORTER and FISHER, *Circuit Judges*.

(Filed: August 16, 2023)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

John Smith petitions for review of the denial of his application for deferral of removal under the Convention Against Torture.[1] Smith cooperated with the Drug Enforcement Agency for approximately three years. He was later convicted of conspiracy to distribute 100 grams or more of heroin under 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B) and deemed removable to Guatemala. Smith contends the Board of Immigration Appeals erred in affirming an Immigration Judge's decision to deny his CAT application.[2] We will deny the petition.[3]

An individual applying for CAT relief must prove both that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal,"[4] and that the torture would be "by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity."[5] We review the BIA's factual findings for substantial evidence and are

---

[1] Smith also applied for asylum and withholding of removal, but the Immigration Judge found that he was ineligible given his conviction for a "particularly serious crime." 8 U.S.C. § 1158(b)(2)(A)(ii). Smith does not challenge those rulings on appeal, so only his claim for CAT relief remains.

[2] Because the BIA largely deferred to the IJ's analysis, we review the BIA's decision by analyzing the IJ's ruling "only insofar as the BIA defer[red] to it." *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010); *see also Sandie v. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir. 2009).

[3] We have jurisdiction under 8 U.S.C. § 1252(a)(1). The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3). Smith's initial petition for review, No. 20-1994, challenged the BIA's summary dismissal of his appeal. But the BIA subsequently reopened the proceedings and dismissed the appeal on the merits. This action mooted Smith's initial petition for review, and we will dismiss it as such.

[4] 8 C.F.R. § 1208.16(c)(2).

[5] *Id.* § 1208.18(a)(1).

required to uphold them "unless any reasonable adjudicator would be compelled to conclude to the contrary."[6] And we review the BIA's legal conclusions de novo.[7]

Smith argues the BIA erroneously concluded that the first prong of CAT relief—that it is more likely than not that Smith would be tortured if removed to Guatemala—was not met. Determining whether Smith would likely be tortured requires two steps: "(1) the agency must examine 'what is likely to happen to the petitioner if removed' and (2) the agency must decide whether 'what is likely to happen amount[s] to the legal definition of torture.'"[8] Smith disputes only the first step, which is a factual issue.[9] To support his likelihood of torture, Smith strung together two hypothetical events: that a criminal organization in Guatemala would identify Smith as an informant and the organization would torture him as a result. The IJ concluded and BIA affirmed that Smith was unlikely to be tortured because neither event was likely to happen. We agree.

Smith argues Guatemalan criminal organizations will identify him as an informant because American and Guatemalan authorities share criminal histories of deportees. So police—and members of criminal organizations who have infiltrated the police—would be able to see he had returned to Guatemala. However, even if criminal organizations accessed his records, they would reveal only Smith's drug conviction and not his status as

---

[6] *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citation omitted).
[7] *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017).
[8] *Quinteros v. Att'y Gen.*, 945 F.3d 772, 787 (3d Cir. 2019) (quoting *Myrie*, 855 F.3d at 516).
[9] *Myrie*, 855 F.3d at 516.

3

an informant.[10] Smith asserts the IJ, and subsequently the BIA, discounted evidence that

his informant status is already known among criminal organizations. He cites an instance

where a fellow inmate referred to him as a "snitch" while in prison, and notes his easily

identifiable appearance as a blue-eyed, pale-skinned Guatemalan. The IJ considered this

evidence but gave it limited weight because Smith's cooperation was never public. Smith

never testified against those he informed on, his immigration proceedings were conducted

under a pseudonym, and his criminal record is sealed. And he was not threatened by any

criminal organization during his cooperation with the DEA. So the finding that Smith's

informant status will not be discovered is "conclusive" because no "reasonable

adjudicator would be compelled to conclude to the contrary."[11]

Furthermore, there is substantial evidence upon which the IJ and BIA concluded

that Smith failed to prove the second link in his chain—that a criminal organization

would torture or kill him if it learned he was an informant. The IJ reasoned that although

country conditions evidenced high rates of violence in Guatemala, neither Smith nor his

family were threatened during his cooperation with the DEA. So the lack of harm to

---

[10] Smith argues the BIA erroneously concluded he "worked for" the gang MS-13. The BIA stated Smith would not likely be tortured "given that no member of either the criminal drug organization he worked for, the MS-13, has threatened or harmed" him. A.R. 4. This appears to be a scrivener's error. By inserting the word "or" before "the MS-13," the statement correctly reflects that Smith had not been harmed by the criminal organization he previously worked for or MS-13, a gang with a large presence in Guatemala.

[11] *Nasrallah*, 140 S. Ct. at 1692 (citation omitted).

4

Smith and his family undermines the likelihood of him being tortured upon his return to Guatemala.[12] Smith faults the IJ for not probing more about a criminal organization's ability to attack Smith's family in Guatemala versus the United States. But it is Smith's burden to present evidence in support of his own claim.[13] He had the ability, through counsel, to present more evidence and ask follow-up questions. He did not. The IJ weighed the evidence in front of him and made findings supported by substantial evidence. Smith's argument translates to a hope that the IJ and BIA had viewed the evidence differently—this is not enough to overturn the agency's conclusion that torture is unlikely.

Even if Smith were to establish that a criminal organization would likely torture him, he failed to prove the second requirement for CAT relief: that the Guatemalan government would acquiesce to such torture. Similar to the likelihood of torture requirement, determining whether the government will acquiesce involves questions of fact and law.[14] Factually, the agency must determine "how public officials will likely act

---

[12] Smith contends the IJ cannot use Smith's lack of past harm as evidence that criminal organizations do not know his informant status *and* as evidence that they would not torture him even if they knew his status. But the IJ's findings were in response to Smith's two hypothetical events. Looking at the first event—that a criminal organization would identify Smith—the IJ concluded identification was unlikely because Smith had not been threatened. But *even if* criminal organizations already know his status, like Smith argues and the second hypothetical assumes, the lack of threats indicates no future harm to Smith.

[13] *See Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 64 (3d Cir. 2007) (recognizing CAT applicant carries the burden to prove claim).

[14] *Myrie*, 855 F.3d at 516.

in response to the harm the petitioner fears," and legally, the agency must assess "whether the likely response from public officials qualifies as acquiescence."[15]

Smith contests multiple facts found by the IJ that led the agency to conclude Guatemalan officials would not acquiesce to Smith's torture. The IJ found, based on testimony from Smith's expert, that while some officers may be disinclined to protect Smith from criminal organizations, others would likely assist him.[16] The IJ considered testimony from Smith's expert witness who detailed country conditions in Guatemala—specifically, evidence of corruption throughout the local government. Smith argues this finding demonstrates that corruption exists and acquiescence is likely to occur. But Smith's expert also conceded the Guatemalan government was actively working to fight corruption, and the IJ referenced multiple occasions where the government captured and prosecuted cartel members. Because the evidence would not compel, as opposed to merely support, different factual findings by a reasonable adjudicator, the IJ's findings are conclusive.[17]

---

[15] *Id.*

[16] Smith contends the IJ articulated the incorrect legal standard by concluding the likely response from officials would not qualify as acquiescence because "*some* officers" but not "*all* officers *would* refuse to assist" Smith. A.R. 149. The IJ was not articulating the wrong legal standard. Instead, he was noting some officials may not assist Smith but that does not, as a matter of fact, mean it is more likely than not that officials will refuse to assist him. And, as a matter of law, some officers refusing to help Smith does not qualify as acquiescence.

[17] *Nasrallah*, 140 S. Ct. at 1692.

The IJ also found that Smith did not report any threats he received to the Guatemalan police after he was coerced into drug trafficking (but before his cooperation with the DEA). Smith asserts the IJ should have made the "logical inference" that Smith does not trust the police.[18] This distrust, the argument goes, indicates public officials would refuse to assist him should he report harm from criminal organizations. But Smith's own view of police is a one-way road: he does not show whether this distrust is valid or how police would act if Smith had reported harm. Once again, Smith has the burden to present evidence to the IJ. He did not introduce evidence to this effect, so the IJ's findings that public officials are not likely to acquiesce to Smith's torture was proper.

Along with fighting the IJ's view of the evidence, Smith contends the BIA failed to address his argument that law enforcement corruption constitutes willful blindness as a matter of law. But the BIA reviewed the record and adopted the IJ's thorough analysis—including his conclusion that Smith would not likely be tortured with the "willful blindness of a public official."[19] "[T]he IJ and BIA need not discuss every piece of evidence mentioned by" a CAT applicant so long as the agency considered all evidence and testimony.[20] Here, the agency reviewed all evidence favorable to Smith and weighed it against the other evidence in the record. That is sufficient for us to conclude, as the agency did, that Smith is not entitled to CAT relief.

---

[18] Pet'r's Br. 28.
[19] A.R. 4.
[20] *Quinteros*, 945 F.3d at 786 (internal quotation marks and citation omitted).

For these reasons, we will deny Smith's petition for review.